UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Cumulus Investors, LLC,                                File No. 20-cv-1919 (ECT/HB)

                    Plaintiff,

v.                                                          **OPINION AND
                                                                 ORDER**

Hiscox, Inc. and Hiscox Insurance
Company Inc.,

                    Defendants.

_____

Scott Godes, Barnes & Thornburg LLP, Washington, DC; Christopher L. Lynch, Barnes
& Thornburg LLP, Minneapolis, MN; and Carrie Marie Raver, Barnes & Thornburg LLP,
Fort Wayne, IN, for Plaintiff Cumulus Investors, LLC.

Joseph A. Oliva, Goldberg Segalla LLP, New York, NY; Marci Goldstein Kokalas,
Goldberg Segalla LLP, Newark, NJ; and Christopher L. Goodman, Thompson, Coe,
Cousins & Irons, LLP, Saint Paul, MN, for Defendants Hiscox, Inc. and Hiscox Insurance
Company Inc.

_____

        Plaintiff Cumulus Investors, LLC filed this action after it was denied employee theft

coverage under a commercial crime policy issued by Defendants Hiscox, Inc. and Hiscox

Insurance Company Inc. (together, "Hiscox").  Hiscox has moved to dismiss the case on

two grounds under Federal Rule of Civil Procedure 12(b).  First, Hiscox argues there is not

subject-matter jurisdiction over the case.  It says Cumulus has failed to allege injury-in-

fact sufficient to satisfy Article III.  This is not correct.  Cumulus alleges economic losses

for which it seeks insurance coverage, and that is enough.  Second, Hiscox argues that

Cumulus has failed to allege facts plausibly showing coverage under the policy.  The

central issue in resolving this aspect of Hiscox's motion is whether Cumulus and non-party

GigaMedia Access Corporation ("Giga") are named insureds under the policy.  The policy identifies the named insured as "NJK Holding Corp. and all subsidiaries and affiliates which are owned, managed or controlled by NJKHolding Corp. [sic] or the Kazeminy Family, or for whom the NJK Holding Corp[.] or the Kazeminy family have insurance responsibilities[.]"  Cumulus alleges that the Kazeminy family owns Cumulus, and that Cumulus owns substantial stock in Giga—enough so that Giga is an "affiliate[] . . . owned, managed or controlled" by the Kazeminy family.  Therefore, says Cumulus, both it and Giga are named insureds, so Cumulus is entitled coverage for an employee theft that Giga employees committed against Cumulus.  Key terms in the policy's definition of named insured are used ambiguously.  Applying Minnesota's canons of insurance-policy construction, those ambiguities must be resolved in Cumulus's favor.  Because a reasonable interpretation of the policy permits the conclusion that Cumulus and Giga are both "affiliates . . . owned, managed or controlled . . . by the Kazeminy Family," Cumulus has stated a claim for coverage under the Policy.  Hiscox's motion to dismiss will be denied.

I

A

This coverage dispute concerns the "Kazeminy Family" and their relationship with three businesses organizations.  The first organization, Cumulus, is an LLC "wholly owned by the Kazeminy Family."  Compl. ¶¶ 22 [ECF No. 1].  Cumulus's members are Nasser Kazeminy, Yvonne Kazeminy, and six LLCs.  *Id.* ¶ 5.  Each member-LLC is owned by a different South Dakota trust.  The sole beneficiary of each trust is a different individual named Kazeminy: Tanya M. Kazeminy, Nader Kazeminy, Yasmin Yvonne Kazeminy,

2

Amira Isabella Kazeminy, Finn Jamie Kazeminy MacKay, and Callum Kazeminy MacKay. *Id.* And each trust shares the same five trustees: Rhonda Donahoe, Louis Freeh, Nader Kazeminy, Tanya Kazeminy, and Great Western Bank. *Id.*

The second company is GigaMedia Access Corporation, which also conducted business as "GigaMedia Corporation" and "GigaTrust." *Id.* ¶ 22. Cumulus began purchasing shares in Giga in October 2010, eventually accumulating 10,589,706 Series E Preferred shares. *Id.* ¶ 24. Cumulus also owned 45,650,449 Series F shares. *Id.* "[B]ased on stock capitalization tables, Cumulus was the largest and most material shareholder of Giga," *id.*, owning between 31.26% and 33.99% of its stock, *id.* ¶ 26.

Finally, a third company relevant to this dispute is NJK Holding Corp., "a corporation organized under the laws of Minnesota." *Id.* ¶ 7. The Complaint does not describe the ownership structure of NJK Holding Corp. The Kazeminy family has negotiated insurance coverage for NJK Holding Corp. as a named insured under multiple policies, including the policy involved in this coverage dispute. *Id.* ¶¶ 9, 65.

## B

Next are the facts underlying Cumulus's insurance claim. On or around May 10, 2019, a Giga employee, Robert Bernardi, "made an urgent request to Cumulus for $10 million." *Id.* ¶ 27. According to Bernardi and fellow employee, Nihat Cardak, Giga needed the funds to avoid defaulting on a $25 million loan with JP Morgan Chase Bank. *Id.* ¶¶ 28–29. The following day, Cumulus agreed to loan Giga $4 million, *id.* ¶ 30, while "Nasser Kazeminy secured another $4,000,000 from his friend and [] Bernardi represented he would provide the remaining $2,000,000 in order to secure the full $10,000,000," *id.*

¶ 29.  Bernardi provided Giga's wire transfer information in an email and claimed he would route Cumulus's funds to a JP Morgan account.  *Id.* ¶ 31.  Cumulus extended Giga a $4 million loan "in reliance on financial statements, bank statements, and a letter that purported to be from Giga's outside counsel."  *Id.* ¶ 30.

Months later, Cumulus discovered the $4 million it loaned was not used to pay down Giga's JP Morgan loan.  Instead, "Bernardi and Cardak . . . improperly took the money and characterized those payments to themselves as large bonuses and other incentive payments from funds that were provided to Giga as capital investments or loans, without applying the money to Giga business purposes."  *Id.* ¶ 33.  To obtain the loan from Cumulus, "Bernardi and Cardak had manipulated data to misrepresent profits and solvency."  *Id.* ¶ 30.  Cumulus would learn that the financial documents and letter it relied on were falsified, and that the "May 10, 2019 letter from Giga's outside counsel contain[ed] a forged signature."  *Id.*  According to Cumulus, it would not have loaned Giga $4 million but for these falsified documents.  *Id.*

Around the same time that they obtained the loan from Cumulus, Bernardi and Cardak "sought to engage in a merger and reorganization involving Crystal Financial, LLC" that "would effectively place Giga under Crystal's control."  *Id.* ¶ 34.  As the largest Giga shareholder, Cumulus needed to sign off on the transaction.  Yet without consulting Cumulus, "Bernardi and/or Cardak" completed the deal by "forg[ing] Cumulus'[s] consent."  *Id.* ¶ 35.  The merger rendered Cumulus's shares in Giga "worthless."  *Id.* ¶ 36.

In November 2019, Cumulus discovered the fraudulent scheme after Giga's deal with Crystal.  *Id.* ¶ 37.  Cumulus notified Giga that it had defaulted on the $4 million loan.

On November 11, Giga signed and verified a confession of judgment of $4,630,888.89 in Nevada state court for its failure to repay the loan. *Id.* ¶ 38; *see also* Oliva Decl. Ex. 1 at 4 ("Proof of Loss Stmt.") [ECF No. 26-1].[1]   On February 14, 2020, the United States Attorney for the Southern District of New York "nam[ed] Cumulus as a federal crime victim in the case against [] Bernardi and Giga." Compl. ¶ 39.  Giga filed for bankruptcy and now "has little to no assets." Proof of Loss Stmt. at 4.  Cumulus alleges it has lost over $17 million as a result of the scheme, and that it has yet to recover any of this sum.  Compl. ¶¶ 40–41.

C

On November 20, 2019, Cumulus notified Hiscox that it was seeking coverage for employee theft under a commercial crime policy issued for the period of October 19, 2019, to October 19, 2020 ("the Policy").  Compl. ¶¶ 8, 43, 57; *see* Compl. Ex. 1 ("Hiscox Policy") [ECF No. 1-2].  The Policy contains a "Crime Coverage Part" that covers "fidelity," including a $5 million limit for:

> A. loss of or damage to **money**, **securities**, or **other property** [from]:
>
>> 1. <u>Employee Theft</u>: sustained by **you** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons[.]

---

[1]     This Proof of Loss statement is fairly embraced by the Complaint, *see* Compl. ¶¶ 70–74, 83, and Cumulus has not disputed its authenticity, even referencing the exhibit for support in its Rule 12 response, *see* Pl.'s Mem. in Opp'n at 25 [ECF No. 35].  It may therefore be relied on without converting Hiscox's motion into one for summary judgment. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791–92 (8th Cir. 2014).

5

Hiscox Policy at 3, 11.  Each bold term in the employee theft definition is defined either in a section "applicable to all Coverage Parts" or in the Crime Coverage Part itself.  Some terms are defined in both places.  Where "the same term is defined" in both sections, "the definition in the [Crime] Coverage Part . . . govern[s] the coverage provided[.]"  *Id.* at 9.  Hiscox denied Cumulus's claim under the employee theft provision, Compl. ¶¶ 94, 98, so it's necessary to examine the operative Policy language and how Cumulus says that language leads to coverage in this case.

First, the Policy covers only employee theft resulting in "loss of or damage to **money**, **securities**, or **other property**."  Hiscox Policy at 11.  Under the Crime Coverage Part, money includes "currency, including Bitcoin or any other digital currency, crypto currency, or electronic currency, coins, or bank notes in current use anywhere in the world and having a face value" and "funds on deposit at a **financial institution**."  *Id.* at 24.  Securities "means instruments or contracts representing **money**, property, or a debt or equity interest in an entity, including . . . stocks and bonds, whether or not evidenced by a certificate[.]"  *Id.* at 25.  In Cumulus's view, it lost money when it loaned $4 million to Giga that "Bernardi and/or Cardak stole for their own enrichment," Compl. ¶ 52, and it lost securities when "Bernardi and/or Cardak committed forgeries," rendering its Giga shares worthless, *id.* ¶ 53.

Second, employee theft coverage is triggered only by "**theft** or **forgery**."  Hiscox Policy at 11.  Theft "means the unlawful taking of property to its owner's deprivation."  *Id.* at 25.  Forgery "means signing the name of another person or organization with the intent to deceive, whether in writing or through an electronic identifier."  *Id.* at 23.  Cumulus

alleges that a theft occurred when Bernardi and/or Cardak wrongfully obtained the $4 million loan. Compl. ¶ 44. Cumulus also alleges that two forgeries occurred: (1) "[t]he forged signature on the May 10, 2019 letter purporting to be from Giga's outside counsel," *id.* ¶ 45, and (2) "[t]he forging of Cumulus'[s] signature in the merger documents," *id.* ¶ 46.

Third, employee theft coverage is triggered only by theft or forgery "committed by an **employee** . . . acting alone or in collusion with other persons." Hiscox Policy at 11. Employee "means an **employee** as defined in each Coverage Part," *id.* at 9, and the Crime Coverage Part defines numerous categories of employees. Those definitions include both (1) a "natural person . . . [a] while in **your** service; [b] whom **you** compensate directly by salary, wages, or commissions; and [c] whom **you** have the right to direct and control while performing services for **you**," and (2) a "natural person who is **your manager**, director, or trustee while performing acts within the usual duties of an employee." *Id.* at 21–22. Also, in a section titled "Other provisions affecting coverage," the Crime Coverage Part states that "[a]n **employee** of any **insured** is considered an **employee** of every **insured**." *Id.* at 27. Cumulus alleges that Bernardi and Cardak were employees of Giga, that Giga is an insured, and that Bernardi and Cardak are therefore employees under the Policy. Compl. ¶¶ 47–49, 51.

Finally, the Policy's employee theft coverage is limited to losses "sustained by **you**." Hiscox Policy at 11. "**You**, **your**, or **insured** means any individual or entity expressly described as an **insured** in any Coverage Part **you** have purchased." *Id.* at 10. In a section titled "Who is an insured," the Crime Coverage Part defines "**you**, **your**, or **insured**" as "a **named insured**, **subsidiary**, **employee benefit plan**, or **acquired entity**,

7

as defined [there]." *Id.* at 14–15.  Only the "named insured" basis for coverage is relevant in this case.  The Crime Coverage Part defines named insured as "the entity identified in Item 1 of the [Policy] Declarations." *Id.* at 15.  Item 1 originally identified "NJK Holding Corp." as the sole named insured.  *Id.* at 2.  Endorsement 7 to the Policy, however, broadened Item 1 to include "NJK Holding Corp. and all subsidiaries and affiliates which are owned, managed or controlled by NJKHolding Corp. [sic] or the Kazeminy Family, or for whom the NJK Holding Corp[.] or the Kazeminy family have insurance responsibilities[.]" *Id.* at 40.  Though dated November 20, Endorsement 7 was effective October 19, 2019.[2]  *Id.*  Cumulus alleges that this definition of named insured is "used in multiple insurance policies by the Kazeminy family," who had originally "sought, and received, confirmation that this definition would be used in the [] Policy on October 11, 2019."  Compl. ¶ 9.  The amended definition does not contain bold text and only one of its terms—subsidiary—is defined anywhere in the Policy.  The terms "Kazeminy Family" and "affiliate[]," for example, are not defined or used elsewhere in the Policy.  Nor does the Policy define "owned," "managed," or "controlled."  Compl. ¶¶ 10–12.

Cumulus contends that it and Giga are both named insureds under the Policy.  *First*, Cumulus alleges it "is wholly owned by the Kazeminy Family," *id.* ¶ 22, and that "Nasser

---

[2]      The Parties disagree precisely how and when Endorsement 7 was agreed upon.  *See* Defs.' Mem. in Supp. at 4 n.2 [ECF No. 25]; Pl.'s Mem. in Opp'n at 6 n.1; Defs.' Reply Mem. at 1–2 n.1 [ECF No. 36].  And on this point, the Parties have each filed materials not embraced by the Complaint.  *See* Oliva Decl., Ex. 2 [ECF No. 26-2]; Kazeminy Decl., Ex. A [ECF No. 34-1].  Regardless, for purposes of its Rule 12 motion, Hiscox accepts that Endorsement 7 applies.  *See* Defs.' Reply Mem. at 9.  Thus, these exhibits will be disregarded for purposes of resolving Hiscox's motion.

Kazeminy, a member of the 'Kazeminy Family' . . . , owned the largest membership interest in Cumulus," *id.* ¶ 23.  Thus, in Cumulus's view, it is a company "owned, managed, and controlled by the Kazeminy Family."  *Id.* ¶ 42.  *Second*, Cumulus says, because the Kazeminy family owns Cumulus, and because Cumulus "was the largest owner of Giga, with stock ownership ranging between 31.26% and 33.99%," Giga was also an "affiliate . . . owned, managed or controlled . . . by the Kazeminy Family."  *Id.* ¶ 50.

D

Cumulus filed its Complaint on September 8, 2020, invoking diversity jurisdiction and alleging one count of breach of contract.  *Id.* ¶¶ 2, 99–104.  Cumulus asserts that the Policy's insureds have performed their contractual obligations, and that the Policy's plain language provides Cumulus employee theft coverage for its losses.  *Id.* ¶¶ 100–01.  Alternatively, Cumulus contends that the Policy's language is ambiguous as applied to its claim, but that a reasonable interpretation still results in coverage.  *Id.* ¶ 102.  Therefore, says Cumulus, Hiscox has breached its obligations under the Policy by denying coverage.  *Id.* ¶ 103.

Hiscox has filed a motion to dismiss under Rule 12.  ECF No. 23.  Hiscox argues essentially that (1) Cumulus lacks Article III standing to sue under the Policy and (2) Cumulus has not stated a claim because it does not meet the coverage elements under the Policy's employee theft provision.  Defs.' Mem. in Supp. at 19–27.

II

Hiscox argues that Cumulus has not established Article III standing. "Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *ABF Freight Sys., Inc. v. Int'l Brotherhood of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011)). To establish Article III standing, a plaintiff must allege facts showing it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (U.S. 2016). "Standing under Article III to bring a claim in federal court is distinct from the merits of a claim," *Enter. Fin. Grp., Inc. v. Podhorn*, 930 F.3d 946, 950 (8th Cir. 2019), and "[i]t is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

Cumulus has alleged facts establishing each element of Article III standing. *First*, "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted)). When an alleged harm is "economic," "the 'injury in fact' question is straightforward." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) (citation omitted). Cumulus has pled extensive allegations of economic harm. Cumulus's losses stem from the $4 million it

loaned to Giga at Bernardi's request, Compl. ¶¶ 29–30, 52, and the devaluation of its shares in Giga, caused by Giga's reorganization under Crystal, *id.* ¶¶ 36, 53.  Together, Cumulus alleges these losses exceeded $17 million, *id.* ¶ 40, and that, having sustained these losses, it's now been deprived coverage under the Policy, *id.* ¶¶ 41, 103–04.   Cumulus's allegations describe an actual injury that is concrete and particularized.  *Second*, Cumulus plausibly alleges a causal link between Hiscox's conduct and its alleged injury: Hiscox breached its contractual obligations under the Policy by denying Cumulus coverage for an employee theft and refusing to cover its losses above the Policy's $50,000 deductible.  *Id.* ¶ 103.  *Third*, Cumulus seeks an award of damages that would redress its alleged injury. *See id.* at 18.

### III

### A

Next, Hiscox has moved to dismiss under Rule 12(b)(6).  In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792 (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

There is diversity jurisdiction over this case under 28 U.S.C. § 1332. *See* Compl. ¶¶ 2–5.[3] "Federal courts sitting in diversity apply state substantive law." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018). The Parties agree that Minnesota law governs interpretation of the Policy. Defs.' Mem. in Supp. at 16; Pl.'s Mem. in Opp'n at 11. Minnesota law will therefore be applied here. *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003). The Minnesota Supreme Court's decisions are binding authority, and when it "has not decided an issue, it is up to this court to predict how [it] would resolve that issue." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).

B

Minnesota's "[g]eneral principles of contract interpretation apply to insurance policies." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (citation omitted). "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law[.]" *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). Unambiguous terms are given their "plain and ordinary meaning," while ambiguous language is construed liberally in favor of coverage. *Travelers Indem. Co. v. Bloomington*

---

[3]     For purposes of diversity jurisdiction, the Hiscox defendants are corporate citizens of Illinois, Delaware, and New York. Compl. ¶¶ 3–4. Cumulus is an LLC whose membership includes two Florida citizens and six LLCs that are "100% owned" by a South Dakota trust. *Id.* ¶ 5. The trustees of those trusts are citizens of Minnesota, Florida, South Dakota, and the United Kingdom. *Id.* The beneficiaries of the trusts are citizens of Florida, California, and the United Kingdom. *Id.* At the motion hearing, Cumulus confirmed there are no other persons or entities that could be considered direct or indirect "members" of Cumulus, and Hiscox has not challenged this assertion. Thus, there is complete diversity of citizenship between the parties.

*Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Minnesota courts apply this canon even in disputes, like this one, "involving a sophisticated insured with equal bargaining power." *Econ. Premier Assurance Co. v. W. Nat'l Mut. Ins. Co.*, 839 N.W.2d 749, 755 (Minn. Ct. App. 2013); *see also* 35A Am. Jur. 2d *Fidelity Bonds & Insurance* § 5 (Feb. 2021 Update). Undefined policy terms are ambiguous when they "are reasonably susceptible to more than one interpretation." *Gen. Cas. Co. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009); *Carlson*, 749 N.W.2d at 45–46.

Cumulus claims it is entitled to coverage under the Policy's employee-theft provision, which obligates Hiscox to pay for:

A. loss of or damage to **money**, **securities**, or **other property**:

1. <u>Employee Theft</u>: sustained by **you** resulting directly from **theft** or **forgery** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons[.]

Hiscox Policy at 11. Cumulus alleges that the Policy's insureds have fulfilled their contractual obligations, Compl. ¶ 100, and neither Party asserts that an exclusion applies. Thus, whether Cumulus has stated a claim for breach of contract turns on whether the employee theft provision's coverage elements have been met.

1

First, there is no doubt that Cumulus's claim is for the "loss of or damage to **money** [and] **securities**" under the Policy's terms. Cumulus lost "**money**"—*i.e.*, "currency"—when it allegedly loaned $4 million to Giga under false pretenses. Compl. ¶ 30; *see* Hiscox Policy at 24. And Cumulus suffered the loss of or damage to "**securities**"—*i.e.*, "stocks

and bonds"—when Bernardi and Cardak arranged the sale of Giga in a transaction that left Cumulus's shares "worthless."  Compl. ¶¶ 34–36; *see* Hiscox Policy at 25.

2

Second, the Policy's employee theft coverage is limited to losses "resulting directly from **theft** or **forgery**."  Hiscox Policy at 11.  Under the Crime Coverage Part, "[t]**heft** means the unlawful taking of property to its owner's deprivation."  *Id.* at 25.  "**Forgery** means signing the name of another person or organization with the intent to deceive, whether in writing or through an electronic identifier."  *Id.* at 23.

Cumulus has adequately pleaded that two separate forgeries occurred: (1) "[t]he forged signature on the May 10, 2019 letter purporting to be from Giga's outside counsel," Compl. ¶ 45, and (2) "[t]he forging of Cumulus'[s] signature in the merger documents," *id.* ¶ 46.  In each instance, Bernardi or Cardak allegedly signed the name of another person (Giga's lawyer) or organization (Cumulus) with intent to deceive.  And in both cases, Cumulus's loss "result[ed] directly" from the forgery.  Hiscox Policy at 11.  "Cumulus would not have made the $4,000,000 loan without having received and seen the letter with the forged signature of Giga's counsel," Compl. ¶ 30, and "Bernardi and/or Cardak forged Cumulus's consent" to a transaction that rendered its shares in Giga "worthless," *id.* ¶¶ 35–36.

Cumulus has also alleged a theft occurred as defined in the Policy.  Bernardi committed an "unlawful taking of property to its owner's deprivation" when he falsified documents, manipulated financial data, and lied to obtain a $4 million loan—a loan he did not intend to repay.  Compl. ¶¶ 30–33.  There are innumerable criminal and civil statutes

14

barring Bernardi's conduct.  In Minnesota, for example, "[a]cts constituting [criminal] theft" include "obtain[ing] . . . the possession, custody, or title to property" of another "by intentionally deceiving [them] with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made," including by making "a promise . . . with intent not to perform."  Minn. Stat. § 609.52, subd. 2(a).

3

Third, the Policy covers only losses "sustained by **you**."  Hiscox Policy at 11.  Under a reasonable interpretation of the Policy, Cumulus falls within the Crime Coverage Part's definition of "**you,**" which includes the "**named insured**."  Hiscox Policy at 14.  "**Named insured** means the entity identified in Item 1 of the Declarations."  *Id.* at 15.  Item 1 identifies "NJK Holding Corp. and all subsidiaries and affiliates which are owned, managed or controlled by NJKHolding Corp. [sic] or the Kazeminy Family[.]"  *Id.* at 40. Several key terms used in Item 1 are undefined.  The Policy does not define the "Kazeminy Family;" the phrase "owned, managed or controlled"; or the term "affiliate[]"; and, though "subsidiary" is defined in the Policy, it does not appear in bold text in Item 1.  While undefined policy language is not "per se . . . ambiguous," *Ritrama, Inc. v. HDI-Gerling Am. Ins. Co.*, 796 F.3d 962, 969 (8th Cir. 2015), each of these terms can be reasonably interpreted in multiple ways in the context in which they're used.

First, consider the Policy's use of "family," which can ordinarily mean a group limited to "one or two parents and their children" or can more broadly refer to "[a] group of persons related by descent or marriage[.]"  *Family*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=family (last visited Feb.

15

17, 2021).  As used in Item 1, is the "Kazeminy Family" limited to one immediate family, to an entire lineage, or to some other group?  Does it cover every "Kazeminy" who is associated with a certain portfolio of companies, such as the eight individuals who are direct or indirect members of Cumulus?  *See* Compl. ¶ 5.

And to what extent must the Kazeminy family "own[], manage[] or control[]" an affiliate or subsidiary?  The verb "own" can mean to "have or possess as property," as in "own[ing] a chain of restaurants," or it can mean to "have control over."  *Own*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=own (last visited Feb. 17, 2021).  Does "owning" a company under Item 1 require owning all of its stock, a majority of stock, or something less than that?  To "control" can ordinarily mean to "exercise authoritative or dominating influence over" or to "direct."  *Control*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=control (last visited Feb. 17, 2021).  May the Kazeminy family "control" an affiliate or subsidiary by controlling a majority of seats on its board or, as Cumulus reasonably argues, by having "the power to vote enough of the shares in a corporation to determine the outcome of matters that the shareholders vote on"?  Pl.'s Mem. in Opp'n at 28 (quoting *Corporate Control*, *Black's Law Dictionary* (10th ed. 2014)).

Finally, "subsidiar[y] and affiliate[]" are also both susceptible to more than one reasonable interpretation.  For instance, does Item 1 use "subsidiar[y]" as it was defined in the Crime Coverage Part, even though it does not appear in bold text?  *See Auto-Owners Ins. Co. v. Kammerer*, 386 F. Supp. 3d 1030, 1035–37 (D. Minn. 2019) (concluding that

16

defined term could "reasonably . . . be understood to have different meanings . . . depending on whether the word appear[ed] in bold or plain text"). And what of "affiliate[]," used side-by-side with subsidiary, and which ordinarily means "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation"? *Adherent Labs., Inc. v. DiPietro*, No. A17-1961, 2018 WL 3520843, at *4 (Minn. Ct. App. July 23, 2018) (quoting *Affiliate*, *Black's Law Dictionary* (9th ed. 2009)).

Having established the ambiguity of several terms used in Item 1, the next step is to determine whether a reasonable interpretation of those terms leads to Cumulus's inclusion as a "named insured." Under Minnesota law, undefined terms reasonably susceptible to more than one interpretation are construed in favor of coverage. *Wozniak Travel, Inc.*, 762 N.W.2d at 575. Item 1 must be construed according to "what a reasonable person in the position of the insured would have understood" it to mean. *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (cleaned up).

A reasonable interpretation of Item 1's terms permits the conclusion that Cumulus is a named insured. Start with the terms "Kazeminy Family" and "owned, managed or controlled." Cumulus alleges it is an LLC "wholly owned by the Kazeminy Family," Compl. ¶ 22; that its members are Nasser Kazeminy, Yvonne Kazeminy, and six member-LLC's; and that each member-LLC is "100% owned" by a trust that solely benefits someone named Kazeminy, *id.* ¶ 5. Cumulus also alleges the broadened definition of "named insured" is "used in multiple insurance policies by the Kazeminy family for insurance purposes." *Id.* ¶ 9. On these facts, the insured could have reasonably understood

17

"Kazeminy Family" to mean individuals named Kazeminy who are direct or indirect members of Cumulus.  In turn, a reasonable person could conclude that Cumulus is "owned, managed, or controlled" by these same individuals who, directly and indirectly, form its entire membership.

Whether Cumulus is a "subsidiar[y]" or "affiliate[]" is a closer call.  If a named insured includes "NJK Holding Corp. and all subsidiaries and affiliates which are owned, managed or controlled by NJKHolding Corp. [sic] or the Kazeminy Family," must the named insured be a subsidiary or affiliate *of* NJK Holding Corp., or can it be one that is simply owned, managed, or controlled by the Kazeminy Family, without qualification?  Because the terms "subsidiary" and "affiliate" each describe a company by its association with some other entity, a reasonable person would understand that a named insured must be an affiliate or subsidiary *of* NJK Holding Corp.  Naturally, then, Cumulus is not a "subsidiar[y]."  A subsidiary is defined both ordinarily and in the Policy[4] to describe a company that is, in some manner, under another company's control.  *See Subsidiary Company*, Am. Heritage Dictionary of the Eng. Language, https://www.ahdictionary.com/word/search.html?q=subsidiary+company (last visited Feb.

---

[4]      The Crime Coverage Part defines subsidiary as "any entity of which the **named insured** has **management control**, either directly or through one or more other subsidiaries."  Hiscox Policy at 15.  "**Management control**" means having "[1] an ownership interest of more than 50%; [2] an ownership interest representing more than 50% of the voting, appointment, or designation power for the selection of a majority of the board of directors, the management committee members, or the members of the management board, whichever is applicable; or [3] the right, whether by law, contract, or otherwise, to elect, appoint, or designate a majority of the board of directors, the management committee, or the management board, whichever is applicable."  *Id.* at 10.

17, 2021) ("A company having more than half of its stock owned by another company.");
*Subsidiary Corporation*, *Black's Law Dictionary* (11th ed. 2019) (defining a "subsidiary
corporation" as one "in which a parent corporation has a controlling share").  As an LLC,
Cumulus does not issue stock.  And Cumulus has not alleged that NJK Holding Corp. is its
owner or member, or that NJK Holding Corp. otherwise exerts control over Cumulus.
Instead, the Complaint catalogues Cumulus's entire membership without mention of NJK
Holding Corp.  *See* Compl. ¶ 5.  Thus, the term subsidiary cannot be reasonably interpreted
to include Cumulus, an LLC in which NJK Holding Corp. has no direct or indirect
membership interest.

But Cumulus could also be an "affiliate[]" of NJK Holding Corp.  Used alongside
subsidiary, "affiliate" means something different.  *See Brookfield Trade Ctr., Inc. v. Cnty.
of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) ("[W]e are to interpret a contract in such a
way as to give meaning to all of its provisions."); *Ritrama*, 796 F.3d at 967 (finding that
undefined term used alongside a similar, defined term, meant something different).  A
reasonable interpretation of affiliate, as used in Item 1, includes a "sibling" entity that is
related to NJK Holding Corp. by common ownership or "other means of control."
*DiPietro*, 2018 WL 3520843, at *4 (quoting *Affiliate*, *Black's Law Dictionary* (9th ed.
2009)); *see also Mey v. DIRECTV, LLC*, 971 F.3d 284, 289–90 (4th Cir. 2020) (applying
ordinary meaning, companies were affiliates "by virtue of their common ownership");
*Securus Techs. Inc. v. Global Tel*Link Corp.*, 676 F. App'x 996, 999–1000 (Fed. Cir.
2017) (broadly interpreting affiliate as "overlapping" with usage of nearby subsidiary and
encompassing parent under "common control" with its subsidiary); *Nat'l Union Fire Ins.*

*Co. v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 320 (S.D.N.Y. 2016) ("[T]he plain meaning of the word 'affiliate' unambiguously includes corporations controlled by the same person or entity."); *BOKF, N.A. v. BCP Land Co.*, No. 6:14-cv-03025-MDH, 2016 WL 951636, at *8–9 (W.D. Mo. Mar. 9, 2016).

Though Cumulus has not described its relationship with NJK Holding Corp. in the Complaint, there seems to be no reasonable dispute that the two entities are related through common ownership and other means of control. For one, Nader Kazeminy owns or holds positions of significant control within both entities. On one hand, he is NJK Holding Corp.'s chief executive officer. *See* Office of the Minnesota Secretary of State, *Business Record Details: NJK Holding Corporation*, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=8d1edb0e-a3d4-e011-a886-001ec94ffe7f (last visited Feb. 17, 2021).[5] On the other, he is a Cumulus member, its "President," and a trustee of six indirect member-trusts. *see* Compl. ¶ 5; Kazeminy Decl. [ECF No. 34]. Nasser Kazeminy's ownership and control also straddles both entities. He has both "owned the largest membership interest in Cumulus," Compl. ¶ 23, and been NJK Holding Corp.'s "[c]hairman" and "sole shareholder." *NJK Holding Corp. v. Araz Grp., Inc.*, 878 N.W.2d 515, 516 (Minn. Ct. App. 2016); *Kazeminy v. Kazeminy*, No. A18-0029, 2019 WL 664893, at *3 (Minn. Ct. App. Feb. 19, 2019). And the Kazeminy family has exhibited its control by purporting to negotiate coverage for

---

[5]     Public records, such as those filed with the Minnesota Secretary of State, may be considered without converting a Rule 12 motion into one for summary judgment. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008).

"multiple insurance policies" on behalf of NJK Holding Corp. and its affiliates. Compl. ¶ 9. Because Cumulus is related to NJK Holding Corp. by common ownership and substantial means of control, it is an "affiliate" under a reasonable construction of Item 1.

4

Last, a theft or forgery must have been committed by an "**employee**." Hiscox Policy at 11. The Parties agree that Bernardi and Cardak were employees of Giga. Compl. ¶¶ 47–48; Defs.' Mem. in Supp. at 26. There's no doubt that, if Giga is an "**insured**," then Bernardi and Cardak would meet the Policy's sweeping definition of employee. *See* Hiscox Policy at 9, 21–22, 36. And under a subsection titled "Joint insured," the Crime Coverage Part states that "[a]n **employee** of any **insured** is considered an **employee** of every **insured**." Hiscox Policy at 27. Thus, if Giga is an "**insured**," then Cumulus has a claim for theft or forgery committed by Giga's "**employee**[s]," Bernardi and Cardak.

Just like Cumulus, Giga can only be considered an "**insured**" if it meets Item 1's definition of "**Named Insured**" as an "affiliate[] . . . owned, managed or controlled by . . . the Kazeminy Family." Hiscox Policy at 14, 40. The Parties dispute whether Giga was "owned, managed or controlled" by the Kazeminy family. Hiscox points out that "Cumulus has not alleged that it had any management control over Giga"; "has not alleged that Cumulus holds any position on Giga's Board"; and is not alleged to have had "more than 50% of the voting, appointment or designation power" to select a majority of Giga's board. Defs.' Mem. in Supp. at 22. Cumulus counters that Giga was "owned, managed or controlled . . . by the Kazeminy Family" because "Cumulus, a company owned by the Kazeminy Family, was the largest owner of Giga, with stock ownership ranging between

31.26% and 33.99%." Compl. ¶ 50. To help its case, Cumulus points out that, to accomplish Giga's merger with another company, Bernardi needed to forge its consent. Pl.'s Mem. in Opp'n at 28.

As noted *supra*, the phrase "owned, managed or controlled" is used ambiguously in the Policy. In Giga's case, the issue is whether it was "owned, managed or controlled" by the Kazeminy family, who indirectly held around one-third of Giga's stock through Cumulus.[6] When interpreting insurance policies, Minnesota courts do not consider words or phrases in isolation, but rather "in the context of the entire contract." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (citation omitted). Here, the Policy's other provisions suggest that the Kazeminy family "owned" or "controlled" Giga as its largest shareholder. Where the Policy uses terms of "ownership," for instance, it does so in terms of degree and, in some cases, the Policy recognizes "ownership" interests of less than fifty percent. For example, the Policy covers vendor theft by employees "with[out] an ownership interest greater than 25% in the **vendor**." Hiscox Policy at 11. It also contains a carveout for theft by certain "owners" who have "a 25% or greater ownership in any one or more **insureds**." *Id.* at 36. Finally, as Cumulus points out, other Policy language explicitly calls for a "controlling ownership interest," *id.* at 35, or requires "an ownership interest of more than 50%," *id.* at. 10. Item 1 doesn't. "[W]ords of inclusion," like Item 1, must be "broadly construed," *Wozniak Travel, Inc.*, 762 N.W.2d at 575, so "owned" and "controlled" cannot be reasonably construed to require

---

[6]   Because Cumulus was an "affiliate" of NJK Holding Corp., Giga was also an affiliate by virtue of Cumulus's one-third interest.

owning more than 50% of a company's stock, nor in the other ways that Hiscox suggests. A reasonable person could understand that the largest shareholder of a company—one controlling between 31.25% and 33.99% of its shares through ownership of an LLC—owns or controls that company.

Item 1's ambiguous language can be reasonably construed to include Giga as a named insured under the Policy. As a named insured, Giga meets the Policy's definition of "**insured**" and its employees—Bernardi and Cardak—fall within the Policy's definition of "**employee**." Cumulus has therefore met the Policy's coverage elements for employee theft.

*

Under a reasonable interpretation of the Policy, Cumulus has plausibly alleged facts that would entitle it to coverage for employee theft. Cumulus has therefore stated a claim for breach of contract, and Hiscox's Rule 12(b)(6) motion to dismiss will be denied on this basis.

## ORDER

Based upon all of the files, records, and proceedings in the above-captioned matter,

**IT IS ORDERED THAT** Defendants' Motion to Dismiss [ECF No. 23] is **DENIED**.


Dated:  February 18, 2021                    s/ Eric C. Tostrud
                                             _____
                                             Eric C. Tostrud
                                             United States District Court